IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|                                        |   |                      |
|----------------------------------------|---|----------------------|
| VALERI BURNOUGH,                       | : |                      |
|                                        | : | Civil Action File No.|
| Plaintiff,                             | : |                      |
|                                        | : |                      |
| vs.                                    | : | Jury Trial Demanded  |
|                                        | : |                      |
| ALLIANCE FOR CHANGE                    | : |                      |
| THROUGH TREATMENT,                     | : |                      |
| LLC; ATTACHMENT &                      | : |                      |
| BONDING CENTER OF                      | : |                      |
| ATLANTA, LLC and                       | : |                      |
| CASSANDRA JOHNSON                      |   |                      |
| LANDRY,                                |   |                      |
|                                        |   |                      |
| Defendants.                            |   |                      |

---

## COMPLAINT

---

Plaintiff Valeri Burnough ("Burnough"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 7, brings this Complaint against Defendants Alliance for Change Through Treatment, LLC ("ACT"), Attachment & Bonding Center of Atlanta, LLC ("ABC") and Cassandra Johnson Landry ("Landry") and shows the Court as follows:

Page 1

1. **INTRODUCTION**

1.

This is an FLSA case. Burnough brings this action because Defendants misclassified her as an independent contractor and failed to pay her at one-and-one-half times her regular rate for all work performed over forty hours in each workweek during her employment with Defendants.

2.

Burnough further asserts claims against Defendant ABC for its fraudulent filing of IRS Forms 1099 in lieu of IRS Form W2 concerning the compensation it paid her for the year 2015, in violation of 26 U.S.C. § 7434.

3.

In addition to her federal causes of action, Burnough asserts pendent state law claims which arise out of the same set of operating facts as her federal claims for Defendants failure to pay her any wages for work she performed during the months of August, September and October 2015.  These are (1) breach of contract, (2) quantum meruit and (3) promissory estoppel.

2. **JURISDICTION AND VENUE**

4.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b),

28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

5.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because ACT and ABC are located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## 3.   THE PARTIES

6.

Burnough resides in Douglas County, Georgia.

7.

ACT employed Burnough as a case manager in and around Atlanta, Georgia from April 2015 until October 8, 2015.

8.

At all times material hereto, Burnough was an "employee" of ACT as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

9.

ACT is a corporation organized under the laws of the State of Georgia.

10.

At all times material hereto, ACT was authorized to conduct business in the State of Georgia.

11.

At all times material hereto, ACT was an "employer" of Burnough as defined in FLSA § 3(d), 29 U.S.C. §203(d).

12.

ACT is subject to the personal jurisdiction of this Court.

13.

ACT may be served with process through its registered agent Cassandra Johnson-Landry located at 869 Natchez Valley Trace, Grayson, Georgia 30017.

14.

ABC employed Burnough as a case manager in and around Atlanta, Georgia from April 2015 until October 8, 2015.

~~15.~~

At all times material hereto, Burnough was an "employee" of ABC as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

16.

ABC is a corporation organized under the laws of the State of Georgia.

17.

At all times material hereto, ABC was authorized to conduct business in the State of Georgia.

18.

At all times material hereto, ABC was an "employer" of Burnough as defined in FLSA § 3(d), 29 U.S.C. §203(d).

19.

ABC is subject to the personal jurisdiction of this Court.

20.

ABC may be served with process through its registered agent Cassandra Johnson-Landry located at 869 Natchez Valley Trace, Grayson, Georgia 30017.

21.

Landry resides within Fulton County, Georgia.

22.

At all times material hereto, Burnough was an "employee" of Landry as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

23.

At all times material hereto, Landry was an "employer" of Burnough as defined in FLSA § 3(d), 29 U.S.C. §203(d).

24.

Landry is subject to the personal jurisdiction of this Court.

25.

Landry may be served with process at her residence located at 869 Natchez Valley Trace, Grayson, Georgia 30017.

**a.  Individual Coverage:**

26.

From on or about April 2015 until October 8, 2015, Burnough  was "engaged in commerce" as an employee of  ACT  as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

27.

From on or about April 2015 until October 8, 2015, Burnough  was "engaged in commerce" as an employee of ABC as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

**b.  Enterprise Coverage:**

28.

From on or about April 2015 until October 8, 2015, ACT  was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

29.

During 2015, ACT had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

30.

During 2015, ACT had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

31.

During 2015, ACT   had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

32.

During the relevant time period, two or more employees of ACT, including Ms. Burnough, used or handled the following items that moved in interstate commerce that are necessary for performing its commercial purpose: computers, paper, office furniture and office supplies.

33.

At all times material hereto, ACT was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

34.

From on or about April 2015 until October 8, 2015, ABC was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

35.

During 2015, ABC had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

36.

During 2015, ABC had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

37.

During 2015, ABC had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

38.

At all times material hereto, ABC was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

### c. Statutory Employer

39.

From on or about April 2015 until October 8, 2015 ("the relevant time period"), Landry exercised operational control over the work activities of Burnough.

40.

During the relevant time period, Landry was involved in the day to day operation of the ACT in which Burnough worked.

41.

During the relevant time period, ACT vested Landry with supervisory authority over Burnough.

42.

During the relevant time period, ABC vested Landry with supervisory authority over Burnough.

43.

During the relevant time period, Landry exercised supervisory authority over Burnough.

44.

During the relevant time period, Landry scheduled Burnough's working hours or supervised the scheduling of Plaintiff's working hours.

45.

During the relevant time period, Landry exercised authority and supervision over Burnough's compensation.

46.

During the relevant time period, Landry was the co-founder, president and registered agent of ACT.

47.

During the relevant time period, Landry was the co-founder, president and registered agent of ABC.

48.

During the relevant time period, Burnough was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

49.

During the relevant time period, ACT did not employ Burnough in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

50.

During the relevant time period, ACT did not employ Burnough in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

51.

During the relevant time period, ACT did not employ Burnough in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

52.

During the relevant time period, ACT did not employ Burnough in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

53.

During the relevant time period, ABC did not employ Burnough in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

54.

During the relevant time period, ABC did not employ Burnough in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

55.

During the relevant time period, ABC did not employ Burnough in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

56.

During the relevant time period, ABC did not employ Burnough in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

### d. Joint Employer Allegations

57.

ACT and ABC comprise a single "enterprise engaged in commerce" as defined in FLSA §3(s)(1)(C); 29 U.S.C. § 203(s)(1 )(C).

58.

During the relevant time period, ACT and ABC have shared the services of Burnough.

59.

During the relevant time period, ACT and ABC have acted directly or indirectly in the interest of each other with respect to Burnough.

60.

During the relevant time period, Burnough has been under the direct control of both ACT and ABC.

61.

During the relevant time period, ACT and ABC have exercised joint control over Burnough in her capacity as an employee.

62.

In 2015, ACT and ABC jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

63.

At all times relevant to this action, ACT and ABC have been a joint employer of Burnough within the meaning of the FLSA.

**e.  Misclassification as an Independent Contractor**

64.

At all times during the relevant time period, the work Burnough performed formed an integral part of Defendants ACT and ABC's business of contracting to providing case management services to DFACS.

65.

At all times during the relevant time period, Defendants ACT and ABC required Burnough to comply with verbal instructions about how she was to perform her duties.

66.

At all times during the relevant time period, Defendants ACT and ABC provided instruction to Burnough so that she would perform her job duties for Defendants in the particular manner that ACT and ABC required.

67.

At all times during the relevant time period, Burnough's work and services were integrated into ACT and ABC's business operations and were important to the success and continuation of ACT and ABC's business.

68.

At all times during the relevant time period, ACT and ABC required Burnough to perform her services for ACT and ABC personally and did not permit her to hire, supervise, or pay employees of her own to perform the services that she provided to Defendants.

69.

At all times during the relevant time period, ACT and ABC determined the order or sequence in which Burnough was required to perform tasks.

70.

At all times during the relevant time period, ACT and ABC required Burnough to remain in constant contact with her Supervisor LaToya Franklin.

71.

At all times during the relevant time period, Burnough constantly communicated with her Supervisor LaToya Franklin via text messages and telephone calls.

72.

At all times during the relevant time period, Burnough constantly communicated with her Supervisor LaToya Franklin to report incidents and discuss clients.

73.

At all times during the relevant time period, Burnough did not make or maintain a significant investment in the equipment that she used in performing her work for ACT and ABC.

74.

At all times during the relevant time period , Burnough was not able to earn any profit or suffer any loss other than by earning hourly wages for the time she worked for ACT and ABC.

75.

At all times during the relevant time period, ACT and ABC required that Burnough's services be exclusively available to ACT and ABC.

76.

At all times during the relevant time period, ACT and ABC determined the hours and schedule in which it required Burnough to work.

77.

At all times during the relevant time period, ACT and ABC required Burnough to work full time for ACT and ABC.

78.

At all times during the relevant time period, ACT and ABC required that all ideas, know-how, processes, equipment, documents, designs, models, inventions copyrightable material and other tangible and intangible materials which Burnough

authored, prepared, created, made, delivered, conceived or reduced to practice in whole or in part in the course of working for ACT and ABC were and would remain the sole and exclusive property of ACT and ABC.

79.

At all times during the relevant time period, ACT and ABC required that all ideas, know-how, processes, equipment, documents, designs, models, inventions copyrightable material and other tangible and intangible materials which Burnough authored, prepared, created, made, delivered, conceived or reduced to practice in whole or in part in the course of working for ACT and ABC would be considered works made for hire.

80.

At all times during the relevant time period, ACT and ABC required Burnough assign to ACT and ABC, and waive for herself, any rights to the all ideas, know-how, processes, equipment, documents, designs, models, inventions copyrightable material and other tangible and intangible materials which Burnough authored, prepared, created, made, delivered, conceived or reduced to practice in whole or in part in the course of working for ACT and ABC.

81.

At all times during the relevant time period, ACT and ABC reserved the right to terminate Burnough's employment at any time, at its own convenience

without incurring any liability except for the work performed and expenses already incurred before the termination.

82.

At all times during the relevant time period, ACT and ABC recognized Burnough's rights to resign her employment at will.

83.

At all times during the relevant time period, Burnough was closely supervised by an ACT and ABC supervisor.

### e. Willfulness

84.

At all times during the Relevant Time Period, ACT and ABC were aware of the Fair Labor Standards Act requirement that it compensate non-exempt employees at one and one-half times their regular rates for all time that it suffered or permitted them to work more than forty hours in a workweek.

85.

At all times during the Relevant Time Period, ACT and ABC were aware that the facts of Burnough's employment circumstances did not meet the standards required for properly classifying workers as independent contractors under federal statutes, case law, regulations, and guidelines.

86.

At all times during the Relevant Time Period, ACT and ABC was aware that Burnough was completely dependent upon ACT and ABC for her livelihood.

87.

At all times during the Relevant Time Period, ACT and ABC were aware that it exercised control over the terms and conditions of Burnough's work.

88.

At all times during the Relevant Time Period, ACT and ABC was aware that, as a matter of economic reality, Burnough was an employee within the meaning of the Fair Labor Standards Act rather than an independent contractor.

89.

ACT and ABC did not rely on the advice of legal counsel when it determined that Burnough should properly be classified as an independent contractor rather than as an employee.

90.

ACT and ABC did not rely on the advice of legal counsel when it continued to classify Burnough as an independent contractor rather than as an employee.

91.

ACT and ABC did not rely on any opinion, rule, or regulation propounded by the U.S. Department of Labor when it classified Burnough as an independent contractor rather than an employee.

92.

ACT and ABC did not rely on any opinion, rule, or regulation propounded by the U.S. Department of Labor when it continued to classify Burnough as an independent contractor rather than an employee.

93.

ACT and ABC classified Burnough as an independent contractor rather as an employee in order to avoid paying her at one-and-one-half times her regular rate for worked in excess of forty hours in a workweek.

94.

ACT and ABC willfully classified Burnough as an independent contractor rather than as an employee in order to avoid paying her at one-and-one-half times her regular rate for worked in excess of forty hours in a workweek.

### f.  Fraudulent Filing Of Tax Information

95.

In 2016, ABC filed an IRS Form 1099-MISC with the Internal Revenue Service with respect to all compensation that it paid Burnough during tax year 2015.

96.

The IRS Form 1099-MISC that ABC filed with the Internal Revenue Service in 2016 purported that all compensation that ABC paid Burnough during tax year 2015 was "nonemployee compensation."

97.

ABC intentionally and willfully filed an IRS Form 1099-MISC with the Internal Revenue Service purporting that all compensation that it paid Burnough during tax year 2015 was "nonemployee compensation." for the purpose of its own enrichment and to avoid payment of taxes, including but not limited to payroll taxes, worker's compensation taxes, and unemployment taxes.

98.

ABC took the actions described above in paragraphs 95 – 97 even though it knew that the claim that Plaintiff was a "non-employee" independent contractor was false.

**g.  Additional Factual Allegations**

99.

At all times material hereto, Defendants compensated Burnough on an hourly basis.

100.

At all times material hereto, Defendants compensated Burnough a rate of $18.00-$20.00 per hour depending on the job assignment.

101.

At all times material hereto, Defendants compensated Burnough an additional $10.00 per hour representing a transportation fee when she transported clients.

102.

At all times material hereto, Defendants compensated Burnough at a rate of $0.40 per mile for each mile driven.

103.

During the relevant time period, Defendants had a contract with DFACS to provide services.

104.

During the relevant time period, DFACS referred cases to Defendants.

105.

During the relevant time period, Burnough did not have a contract with DFACS to provide services.

106.

During the relevant time period, Defendants assigned Burnough cases that DFACS referred to Defendants.

107.

During the relevant time period, Burnough did not exercise discretion in making significant business decisions.

108.

During the relevant time period, Burnough's primary duties consisted of assessing clients' homes for compliance, observing children at schools, transporting clients' to and from doctor and court appointments and counseling.

109.

During the relevant time period, Burnough followed a protocol set by Defendants when interacting with Defendants' clients.

110.

During the relevant time period, Burnough's discretion in making decisions was limited and circumscribed by the policies and procedures set out by Defendants.

111.

During the relevant time period, Defendants instructed Burnough on each case.

112.

During the relevant time period, Burnough was provided with each client's behavioral and medical history.

113.

During the relevant time period, Burnough was provided with a set goal for each client based on their history.

114.

During the relevant time period, Burnough was required to observe clients and make recommendations.

115.

During the relevant time period, Burnough did not make any final decisions regarding clients' treatment and continued care.

116.

During the relevant time period, Burnough regularly worked five days during each work week, typically from Monday through Friday.

117.

During the relevant time period, Burnough also worked approximately four Saturdays in addition to her regular work days.

118.

During the relevant time period, Burnough's working hours varied each work day.

119.

During the relevant time period, Burnough observed and counseled a child for 24 hours or more on at least one or more occasions.

120.

During the relevant time period, Defendants required Burnough to submit an invoice for all working hours and mileage on a monthly basis.

121.

During the relevant time period, Defendants failed to compensate Burnough for all hours and mileage she submitted each month from April 2015 through July 2015.

122.

During the relevant time period, in addition to the duties performed during her regular scheduled working hours as described above, Burnough was also required to attend staff meetings and training each week.

123.

During the relevant time period, Defendants did not compensate Burnough for any of the time Burnough spent at staff meetings and training each week.

124.

During the relevant time period, Defendants paid Burnough once per month.

125.

During the relevant time period, Defendants failed to compensate Burnough at all for the months of August, September and October 2015.

### COUNT I — FAILURE TO PAY OVERTIME AS TO ALL DEFENDANTS

126.

Plaintiff incorporates by reference the allegations in all previous paragraphs as if fully set out in this paragraph.

127.

At all times material hereto, Burnough has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

128.

During her employment with Defendants, Burnough was required regularly to work in excess of forty (40) hours during each week.

129.

Defendants failed to pay Burnough at one and one half times her regular rate for all the hours she worked in excess of forty (40) hours in each workweek from April 2015 through October 8, 2015.

130.

Defendants willfully failed to pay Burnough at one and one half times her regular rate for all hours that she worked in excess of forty (40) hours in each workweek from April 2015 through October 8, 2015.

131.

Burnough is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

132.

As a result of the underpayment of overtime compensation as alleged above, Burnough is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

133.

As a result of the underpayment of overtime compensation as alleged above, Burnough is entitled to her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT II – CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS (26 U.S.C. § 7434)

134.

Plaintiff incorporates by reference the allegations in all previous paragraphs are incorporated as if fully set out in this paragraph.

135.

At all times during the relevant time period, Burnough was an employee of ABC.

136.

At all times during the relevant time period, ABC classified Burnough as an independent contractor.

137.

At all times during the relevant time period, ABC misclassified Burnough as an independent contractor.

138.

At all times during the relevant time period, ABC has intentionally, willfully, and fraudulently misclassified Burnough as an independent contractor.

139.

As a consequence of ABC's willful filing of fraudulent tax information returns, Burnough is entitled to recover damages from ABC up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as her costs of litigation including her reasonable attorneys' fees, pursuant to 26 U.S.C. § 7434.

## COUNT III - BREACH OF CONTRACT

140.

Plaintiff incorporates by reference the allegations in all previous paragraphs are incorporated as if fully set herein.

141.

Burnough, ACT and ABC were parties to a contract of employment (hereafter "the Contract") from on or about April 2015 through October 2015.

142.

The Contract provided that ACT and ABC would pay Burnough for work that was performed by Burnough on behalf of and for the benefit of Defendants.

143.

Defendants' failure to pay Burnough any wages for work she performed during the months of August, September and October 2015 constitutes a material breach of the Contract.

144.

As the direct and foreseeable result of this breach, Burnough has sustained and continues to sustain damages in an amount to be proved at trial.

## COUNT IV – QUANTUM MERUIT

145.

Plaintiff incorporates by reference the allegations in all previous paragraphs as if fully set out in this paragraph.

146.

From on or about April 2015 through October 2015, Burnough served as a case manager for ACT and ABC.

147.

Burnough's service as a case manager for ACT and ABC as described above was valuable to Defendants.

148.

ACT and ABC requested Burnough's service as a case manager.

149.

ACT and ABC knowingly accepted Burnough's service as a case manager.

150.

The receipt of Burnough's services as a case manager for ACT and ABC without compensation would be unjust.

151.

Burnough expected to be compensated at the time she provided her services as a case manager.

152.

Burnough is entitled to a recover from ACT and ABC the reasonable value of the services she provided as a case manager for Defendants during the months of August, September and October 2015, in an amount to be determined at trial.

## COUNT V - PROMISSORY ESTOPPEL

### 153.

Plaintiff incorporates by reference the allegations in all previous paragraphs as if fully set out in this paragraph.

### 154.

In April 2015, ACT and ABC promised to pay Burnough in return for Burnough's service as a case manager for them.

### 155.

ACT and ABC should have reasonably expected that Burnough would induce action in reliance of said promise, i.e., serve as a case manager for Defendants.

### 156.

ACT and ABC's promise induced Burnough to act in reliance thereof, i.e., to serve as a case manager for them, to her detriment.

### 157.

Burnough's service as a case manager for ACT and ABC conferred a benefit on them.

### 158.

ACT and ABC failed to pay Burnough in accordance with their promise.

159.

Burnough relied on Defendants' promise.

160.

Burnough's reliance on Defendants' promise was reasonable.

161.

Injustice can only be avoided by enforcement of Defendants' promise.

162.

Burnough is entitled to a recover from ACT and ABC the reasonable value of the services she provided as a case manager for Defendants during the months of August, September and October 2015, in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully prays:

1. That Plaintiff's claims be tried before a jury;

2. That Plaintiff be awarded an amount to be determined at trial against Defendants in unpaid overtime compensation due under the FLSA, plus additional like amount in liquidated damages;

3. That Plaintiff be awarded no less than $5,000 for the fraudulent tax information return filed with respect to her by Defendants ACT and/or ABC for tax year 2015;

4. That Plaintiff be awarded an amount as determined at trial against Defendants as damages under Counts II, III and IV of this Complaint;

5. That Plaintiff be awarded costs of litigation, including her reasonable attorneys' fees from Defendants; and

6. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

3100 CENTENNIAL TOWER
101 MARIETTA STREET
ATLANTA, GEORGIA 30303
(404) 979-3171
(404) 979-3170 (f)
michaelcaldwell@dcbflegal.com
charlesbridgers@dcbflegal.com

/S/ MICHAEL A. CALDWELL
MICHAEL A. CALDWELL
GA. BAR NO. 102775

/S/CHARLES R. BRIDGERS
CHARLES R. BRIDGERS
GA. BAR NO. 080791

COUNSEL FOR PLAINTIFF